IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**KIMBERLIE GILLILAND,**

      **Petitioner,**

v.

**T. LUKE BARTEAUX,**
**SARA E. HILL,**
**RALPH KEEN, II,**

      **Respondents.**

Case No. 22-CV-0257-JFH-JFJ

## OPINION AND ORDER

Petitioner Kimberlie Gilliland, appearing through counsel, seeks a writ of habeas corpus, under the Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. § 1301 *et seq.*, claiming she is unlawfully detained by orders issued by Respondent T. Luke Barteaux, Judge for the District Court of the Cherokee Nation, in Cherokee Nation District Court Case No. CM 2016-54. *See* 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). Citing Federal Rule of Civil Procedure 12(b)(1), Respondents Judge Barteaux, Cherokee Nation Attorney General Sara E. Hill, and Cherokee Nation Special Prosecutor Ralph Keen, II (collectively, "Respondents") move to dismiss the habeas petition, asserting that: (1) the fugitive disentitlement doctrine bars habeas relief because Gilliland moved to Poland and refuses to return to the United States to avoid arrest and prosecution; (2) this Court lacks subject matter jurisdiction because Gilliland is not "in custody" as that phrase is interpreted in federal habeas jurisprudence; and (3) even if the Court finds that Gilliland is "in custody," Gilliland has not exhausted available tribal remedies.

Before the Court are Gilliland's Petition for a Writ of Habeas Corpus under 25 U.S.C. § 1301 filed June 15, 2022 ("Petition") [Dkt. No. 2], Respondents' Motion to Dismiss filed September 2, 2022 ("Motion") [Dkt. No. 9], Gilliland's Objection to Respondents' Motion to Dismiss filed September 20, 2022 ("Objection") [Dkt. No. 10], Respondents' Reply in Support of Motion to Dismiss filed October 4, 2022 ("Reply") [Dkt. No. 11], and Respondents' Notice of Supplemental Authority filed December 21, 2022 ("Notice") [Dkt. No. 12]. Having considered the foregoing, along with applicable law, the Court GRANTS the Motion and DISMISSES the Petition, without prejudice, for lack of subject matter jurisdiction.

## I.  BACKGROUND

Gilliland resigned from her position as Executive Director of the Cherokee Nation Foundation ("CNF"), a non-profit organization, in 2013. Dkt. No. 2 at 3.[1]  Three years later, the Cherokee Nation filed a criminal complaint against Gilliland, in Cherokee Nation District Court Case No. CM 2016-54, charging her with nine counts of embezzlement. *Id.*  In August 2016, Gilliland surrendered to tribal authorities, was arraigned on the complaint, entered a plea of not guilty, and was released on her own recognizance with no bond required. *Id.* at 57.  In August 2018, before trial, Gilliland moved to Poland with her husband, a Polish citizen, and their two children. *Id.* at 4 12.

Seven months later, the Cherokee Nation filed an amended complaint, charging Gilliland with six additional counts of embezzlement. *Id.* at 13, 113.  Before she was arraigned on the amended complaint, Gilliland filed a motion to strike the amended complaint and a demurrer to the amended complaint. *Id.* at 14.  After Judge Barteaux denied the motion and overruled the demur, he ordered Gilliland to present herself for arraignment on July 19, 2019. *Id.*  Neither

---

[1] For consistency, the Court's citations refer to the CM/ECF pagination.

Gilliland nor her attorney appeared for arraignment. Dkt. No. 2 at 223, 228. Judge Barteaux revoked Gilliland's personal recognizance bond, set a new cash bond of $10,000, and issued a bench warrant on August 8, 2019, based on Gilliland's failure to appear ("August Bench Warrant"). *Id.* at 14-15, 223, 225-26, 228. On October 1, 2019, Judge Barteaux granted Gilliland's motion to withdraw the August Bench Warrant on the condition that Gilliland appear on October 18, 2019, for arraignment on the amended complaint.[2] *Id.* at 15, 359 n.1.

On October 3, 2019, Gilliland's attorney informed Respondent Keen, via email, that Gilliland was living in Poland. Dkt. No. 2. at 400. Six days later, Judge Barteaux granted Gilliland's unopposed motion to appear by telephone for her arraignment. *Id.* at 237. On October 18, 2019, Gilliland appeared by telephone for arraignment on the amended complaint and pleaded not guilty. *Id.* at 5. That same day, Judge Barteaux heard oral arguments on Gilliland's motion to reinstate the previously revoked personal recognizance bond. *Id.* at 248. In an order filed October 22, 2019, Judge Barteaux denied the motion, ordered Gilliland to deposit the previously imposed cash bond of $10,000 with the Cherokee Nation District Court by close of business on November 20, 2019, and advised Gilliland that a bench warrant would issue if she did not pay the cash bond. *Id.* Gilliland did not pay the cash bond by the established deadline. Dkt. No. 10 at 13.

On November 5, 2019, before the deadline to pay the cash bond expired, Gilliland filed a Petition for Writ of Habeas Corpus and Appeal from Interlocutory Orders in the Supreme Court of the Cherokee Nation. Dkt. No. 2 at 250. Gilliland identified the orders appealed from as "the July 2, 2019, Order of Motion to Strike Amended Complaint[, the] July 2, 2019, Order on Demur to Complaint[,] and [the] October 22, 2019, Order Denying Motion to Reinstat[e] Personal

---

[2] Gilliland's motion to withdraw the August Bench Warrant explained that, due to an email issue, her counsel did not receive notice of the July 19, 2019, arraignment. Dkt. No. 2 at 230-32. Nothing in the motion indicated that Gilliland had been residing in Poland since 2018. *See id.*, generally.

3

Recognizance Bond." Dkt. No. 2 at 251.  Gilliland identified two issues.  First, she claimed "[t]he bail set by the district court violates the Nation's law" because "Gilliland complied with her personal recognizance bond," imposing a $10,000 cash bond "is excessive and punitive," and the district court "had no authority to issue a bench warrant outside the Nation."[3]  *Id.* at 259.  Second, she claimed "[t]he criminal charges for which bail is required are unconstitutional or illegal" because:  (1) the allegations in the amended complaint "do not apprise her of the particulars of the crime[s]" charged; (2) "the charging statute does not state a crime as alleged and is void by vagueness"; (3) the amended complaint "fails to apprise Gilliland of the factual allegations of the charges"; (4) the amended complaint "was filed after the statute of limitations expired"; (5) the amended complaint "violates the ICRA limitation on punishment"; and (6) the district court erred in failing to find that the prosecutor "had a conflict of interest."  *Id.*  On November 4, 2020, the Supreme Court of the Cherokee Nation denied Gilliland's petition for a writ of habeas corpus, dismissed her interlocutory appeal as "premature," and remanded the case to the Cherokee Nation District Court for further proceedings.  *Id.* at 380-82.

On March 26, 2021, neither Gilliland nor her attorney appeared for the district court's jury trial disposition docket. Dkt. No. 2 at 400.  That same day, Judge Barteaux issued an arrest warrant for Gilliland, citing her "failure to timely pay bond after order of reinstatement" ("March Arrest Warrant").  *Id.* at 384.  The March Arrest Warrant orders the arresting officer to "bring [Gilliland] before a judge of the Cherokee Nation District Court to answer the charges against" her, and further orders that the arresting officer may release Gilliland, without taking her before a judge, if she

---

[3] Gilliland's challenge to the lawfulness of the "bench warrant" appears to refer to the August Bench Warrant, even though that warrant was withdrawn before she sought relief in the Supreme Court of the Cherokee Nation, because there is no evidence in the record that a bench warrant was ever issued pursuant to the October 22, 2019, Order denying her motion to reinstate the personal recognizance bond and the March Arrest Warrant had not yet been issued.

posts a $10,000 cash appearance bond. Dkt. No. 2, at 384. During a status hearing on April 5, 2021, Gilliland's counsel announced that Gilliland "may be willing to waive her right to attend the trial in person." *Id.* at 400. The Cherokee Nation objected to a trial *in absentia* and moved to strike a trial setting until Gilliland is in physical custody. *Id.* at 399-405. On May 17, 2022, Judge Barteaux issued an order striking Gilliland's criminal case from the court's jury docket "until such time as [she] settles" the March Arrest Warrant. *Id.* at 423. Judge Barteaux reasoned:

> Defendant has failed to appear in person before this Court for over a year. There is an outstanding arrest warrant for the Defendant's arrest that was issued on or about on March 26, 2021. The Court was informed by counsel that the Defendant might be residing within the country of Poland.

*Id.* Judge Barteaux ordered that the case would be set "on the first jury trial sounding docket available after the Court is informed that the Defendant has settled her warrant." *Id.*

In the Petition, Gilliland essentially reasserts the same issues she presented to the Supreme Court of the Cherokee Nation. She claims that: (1) Judge Barteaux's "detention orders violate the Nation's law and due process require[d] by the ICRA" because the $10,000 cash bond is "excessive and punitive" and Judge Barteaux "had no authority to issue a bench or arrest warrant for service outside the Nation"; and (2) Judge Barteaux's detention orders "are unconstitutional because they are predicated on the underlying criminal prosecution which fundamentally denies Gilliland due process" for the same reasons Gilliland asserted to support her interlocutory appeal. Dkt. No. 2 at 43-44. Gilliland asks this Court to: (1) "order Judge Barteaux to withdraw his detention orders including the October 22, 2019, Order issuing bench warrant imposing a $10,000 cash bond and [the] March 26, 2021, Arrest Warrant," *id.* at 45; and (2) "find the Cherokee Nation criminal charges against her violat[e] due process and order the Cherokee Nation District Court to dismiss them with prejudice," *id.* at 9, 45.

5

## II. DISCUSSION

When a party moves for dismissal under Rule 12(b)(1), "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Respondents facially challenge the existence of jurisdiction, arguing that the facts alleged in the Petition, and filings in the underlying tribal court case that are subject to judicial notice, show that this Court lacks jurisdiction to adjudicate the Petition. Dkt. No. 9 at 4, 7-12; *see United Keetoowah Band of Cherokee Indians in Okla. v. Barteaux*, 527 F. Supp. 3d 1309, 1321 (N.D. Okla. 2020) (evaluating facial attack on subject matter jurisdiction and tribal exhaustion of remedies in ICRA habeas case by considering "the facts as alleged in the Amended Complaint . . . and the tribal court filings and orders . . . of which the court takes judicial notice.").

Section 1303 provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303. But "[a]ll federal courts addressing the issue mandate that two prerequisites be satisfied before they will hear a habeas petition filed under ICRA: [t]he petitioner must be in custody, and the petitioner must first exhaust tribal remedies." *Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv.*, 28 F.4th 1051, 1060-61 (10th Cir. 2022) (quoting Cohen's Handbook of Federal Indian Law § 9.09 (2017)); *see also Valenzuela v. Smith*, 699 F.3d 1199, 1205-07 (10th Cir. 2012) (discussing tribal exhaustion rule). While § 1303 does not use the phrase "in custody," that section's use of the word "detention" has been interpreted as "analogous" to the "in custody" requirement in other federal habeas statutes. *Valenzuela*, 699 F.3d at 1203; *Dry v.*

*CFR Court of Indian Offenses for Choctaw Nation*, 168 F.3d 1207, 1208 (10th Cir. 1999). The "in custody" requirement "has been referred to as jurisdictional," whereas the exhaustion requirement is a non-jurisdictional prudential rule that federal courts apply "[o]ut of respect for comity and the tribal sovereignty interests that undergird ICRA." *Chegup*, 28 F.4th at 1054, 1060-62, 1067.

Respondents move to dismiss the Petition for three reasons. First, they invoke the fugitive disentitlement doctrine and urge the Court to dismiss the Petition because Gilliland remains in Poland and refuses to return to the United States to avoid arrest and prosecution.[4] Dkt. No. 9, at 6-7; Dkt. No. 11, at 2-5. Second, they contend this Court lacks subject matter jurisdiction because Gilliland is not "in custody" and, even if she is, this Court lacks authority to grant her request for an order directing the Cherokee Nation District Court to dismiss criminal charges. Dkt. No. 9, at 8-11, 13-15; Dkt. No. 11, at 5-6, 9-10. Third, they contend that even if Gilliland is "in custody," she has not exhausted the available tribal remedy of proceeding with a jury trial and, if convicted, seeking appellate review of her judgment and sentence in the Supreme Court of the Cherokee Nation. Dkt. No. 9 at 11-13; Dkt. No. 11, at 7-9.

Gilliland opposes dismissal for three reasons. First, she contends the fugitive disentitlement doctrine does not apply because the personal recognizance bond issued after she was arraigned on the original complaint did not prohibit her from moving to Poland and she did not "flee" to avoid prosecution. Dkt. No. 10 at 14-18. Second, she contends she is "in custody" "because the Respondents' detention orders, including the March 26, 2021 Arrest Warrant with requirements to post a $10,000 cash bond, subject her to restraints not shared by the public

---

[4] According to Respondents, the Cherokee Nation has no extradition agreement with Poland. *See* Dkt. No. 11, at 3 ("Providing her foreign address where the Cherokee Nation may not extradite [Gilliland] does not alter her decision to avoid arrest and legal process.").

generally." *Id.* at 20-22.  Third, she contends she exhausted tribal remedies by presenting her claims to the Supreme Court of the Cherokee Nation through the Petition for Writ of Habeas Corpus and Appeal from Interlocutory Orders filed November 5, 2019, and that further exhaustion, particularly any requirement that she proceed with a jury trial on allegedly unconstitutional charges, would be "futile." *Id.* at 23-27.

The Court begins and ends it analysis with the parties' arguments regarding whether Gilliland is "in custody."  A federal court does not have jurisdiction to adjudicate a § 1303 habeas petition unless the petitioner is "in custody" "by order of an Indian tribe." 25 U.S.C. § 1303; *Dry*, 168 F.3d at 1208.  But the petitioner does not need to be in physical custody to satisfy this requirement.  *Dry*, 168 F.3d at 1208.  Instead, "[a] petitioner is in custody for purposes of the [habeas] statute if he or she is subject to 'severe restraints on [his or her] individual liberty.'" *Id.* (quoting *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973)).  A severe restraint is one "not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

As a preliminary matter, Gilliland appears to identify the allegedly unlawful "detention orders" under which she claims to be in custody as including the August Bench Warrant and court minute orders related to the issuance of that warrant, the October 22, 2019, Order Denying Motion to Reinstate Personal Recognizance Bond, and the March Arrest Warrant. Dkt. No. 2 at 2; Dkt. No. 10 at 9, 22.  But her description of "detention orders" is overly broad.  As previously stated, Judge Barteaux withdrew the August Bench Warrant in October 2019 on Gilliland's motion, mooting any challenge to the legality of that bench warrant.  And while Judge Barteaux's October 22, 2019, Order denied Gilliland's request to reinstate the personal recognizance bond and required her to post a $10,000 cash bond by November 20, 2019, there is no evidence in the record that Judge Barteaux issued any bench warrant pursuant to this order despite Gilliland's failure to pay

the cash bond on or before the established deadline. Thus, the only "detention order" at issue in this proceeding is the outstanding March Arrest Warrant that requires Gilliland to post a $10,000 cash bond to secure her release from custody if she is arrested.

As Respondents acknowledge, the United States Court of Appeals for the Tenth Circuit concluded in *Dry* that habeas petitioners seeking relief under 28 U.S.C. § 2241 and 25 U.S.C. § 1303, were "in custody" when "tribal authorities charged, arraigned, and released [habeas petitioners] on their own recognizance pending trial." 168 F.3d at 1208 & n.1. Applying *Hensley*'s "severe restraints" test, the *Dry* Court reasoned that while the petitioners were "ostensibly free to come and go as they please, they remain[ed] obligated to appear for trial at the court's discretion." *Id.* Gilliland does not discuss *Dry*, but she appears to rely on *Hensley* to argue that she is "in custody" because: (1) she was initially released on her own recognizance without restrictions; (2) she was later ordered to pay an excessive $10,000 cash bond, despite her compliance with the personal recognizance bond; and (3) the March Arrest Warrant severely restrains her liberty because she may be arrested if she returns to the United States. Dkt. No. 2 at 1-6, 9, 18-20; Dkt. No. 10 at 12, 20-22.

The Court acknowledges that the interpretation of when a habeas petitioner is "in custody" encompasses a broad range of circumstances. But the *Hensley* Court cautioned that its expansive understanding of the "in custody" requirement would not "open the doors of the district courts to the habeas corpus petitions of all persons released on bail or on their own recognizance." *Hensley*, 411 U.S. at 353. And the Court finds no basis to open the door for Gilliland because *Hensley* and *Dry* both involved different facts than the instant case. Admittedly, the petitioners in *Dry*, like Gilliland, sought pretrial habeas relief. 168 F.3d at 1208. And, in determining the petitioners in that case were subject to "severe restraints," the *Dry* court relied heavily (if not exclusively) on

the fact that the petitioners in that case were not entirely "free to come and go" because while they had been released on their own recognizance, they "remain[ed] obligated to appear for trial at the court's discretion." *Id.* at 1208. Critically though, nothing in *Dry* suggests that the petitioners in that case, after being charged, arraigned, and released on their own recognizance, subsequently moved out of the United States, had their personal recognizance bonds revoked for failing to appear as directed by the releasing court, were subject to outstanding arrest warrants for failure to post cash bonds as ordered by the releasing court, or requested that they be tried *in absentia* after failing to appear before the releasing court for over a year. *Id.* at 1208-09. *Dry* is thus distinguishable on its facts.

So is *Hensley*. Unlike Gilliland, the petitioner in *Hensley* sought posttrial habeas relief, "challenging a state court conviction on First and Fourteenth Amendment grounds," while he "was enlarged on his own recognizance pending execution of sentence." 411 U.S. at 345-46. And, while Gilliland initially was released on her own recognizance without any apparent conditions or restrictions,[5] the *Hensley* Court assumed that certain statutory conditions were "imposed on the petitioner as the price of his release," specifically, conditions that required the petitioner to "appear at all times and places as ordered" by the court that released him, that required the petitioner to waive extradition if he were apprehended after failing to appear, and that permitted "[a]ny court or magistrate of competent jurisdiction [to] revoke the order of release and either return him to custody or require that he give bail or other assurance of his appearance." *Id.* at 348. Moreover, even though Gilliland presently is subject to the March Arrest Warrant and the condition that she post a cash bond to secure her release if she is arrested, rather than a personal recognizance bond,

---

[5] Gilliland alleges, and the record supports, that the order releasing her on her own recognizance did not impose any conditions "on her residency" or requiring her to report a change of address to the tribal court. Dkt. No. 2 at 12, 57; Dkt. No. 10 at 9, 15.

10

Gilliland does not face the same "special urgency" that concerned the *Hensley* Court. 411 U.S. at 351. In determining the petitioner in *Hensley* was in custody, the *Hensley* Court reasoned, in part, that:

> The petitioner remains at large only by the grace of a stay entered first by the state trial court and then extended by two Justices of this Court. The State has emphatically indicated its determination to put him behind bars, and the State has taken every possible step to secure that result. His incarceration is not, in other words, a speculative possibility that depends on a number of contingencies over which he has no control. This is not a case where the unfolding of events may render the entire controversy academic. The petitioner has been forced to fend off the state authorities by means of a stay, and those authorities retain the determination and the power to seize him as soon as the obstacle of the stay is removed. The need to keep the stay in force is itself an unusual and substantial impairment of his liberty.

*Hensley*, 411 U.S. at 351-52. Here, Gilliland remains at large in Poland by her own deliberate choice to move there after she was arraigned on the original complaint. She has emphatically indicated her intent not to return to the United States for trial by requesting a trial *in abstentia*. And Gilliland's arrest and prosecution, at this point, is a speculative possibility that depends entirely on a factor within her control, namely, whether she returns to the United States for trial. *See, e.g.*, *Spring v. Caldwell*, 692 F.2d 994, 998 (5th Cir. 1982) (distinguishing *Hensley*'s concern regarding the "imminent possibility of incarceration," and explaining that "the possible incarceration here does not depend on a number of factors over which Spring has no control" because the petitioner in *Spring* could avoid incarceration by paying a fine). For these reasons, the facts in this case are significantly different from the facts in *Hensley*.

Further, Gilliland is not in "constructive custody" for habeas purposes simply because she is subject to an arrest warrant for failure to comply with the tribal court's order to post a cash bond.

*Cf. Jones v. Grant*, 5 F. App'x 836, 837-38 (10th Cir. 2001)[6] (concluding, in relevant part, that "an arrest warrant for refusal to pay a fine does not amount to 'custody' for the purposes of [28 U.S.C.] § 2254" and rejecting habeas petitioner's argument that he was in "constructive custody" because state authorities administratively suspended his driver's license and issued warrants for his arrest after he failed to appear in municipal court); *Spring*, 692 F.2d at 999 (holding that, in most cases, "an arrest warrant issued for willful refusal to pay a fine does not amount to custody within the meaning of 28 U.S.C. §§ 2241 and 2254 habeas cases challenging the constitutionality of a state statute that only imposes a fine").[7]

In sum, the Court finds that Gilliland is not "in custody," "detained," or otherwise subject to "severe restraints on her individual liberty" given that she made a deliberate choice to move out of the United States while criminal charges are pending against her and the only relevant "detention order" she identifies is the March Arrest Warrant that requires her to post a cash bond only if she

---

[6] The Court cites this unpublished case for its persuasive value. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[7] In *Spring*, the Fifth Circuit limited its holding by stating that it does not extend to "cases of indigency, or inability to pay the fine." 692 F.2d at 999 n.6.

is arrested following her deliberate choice to return to the United States.[8]

### III. CONCLUSION

Because Gilliland is not "in custody," the Court DISMISSES the Petition for lack of subject matter jurisdiction. Further, because reasonable jurists would not debate the procedural dismissal of the Petition under the facts of this case, the Court DENIES a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 273, 284 (2000).

THEREFORE, IT IS HEREBY ORDERED that:

1. Respondents' Motion to Dismiss filed September 2, 2022 [Dkt. No. 9] is GRANTED.

2. Gilliland's Petition for a Writ of Habeas Corpus under 25 U.S.C. § 1301 filed June 15, 2022 [Dkt. No. 2] is DISMISSED without prejudice for lack of subject matter jurisdiction.

3. A certificate of appealability is DENIED.

4. A separate judgment of dismissal shall be entered herewith.

---

[8] Because the Court finds that Gilliland is not in custody, thereby depriving this Court of jurisdiction, it declines to address Respondents' alternative arguments regarding the fugitive disentitlement doctrine and the tribal exhaustion rule. However, the Court agrees with Respondents that even if this Court had jurisdiction and even if Gilliland could show that she properly exhausted her unconstitutional-charges claim, this Court would decline to reach the merits of the unconstitutional-charges claim in this pretrial habeas action and would not grant the relief Gilliland seeks relative to that claim—namely, the dismissal of pending criminal charges. *See Jones v. Perkins*, 245 U.S. 390, 391 (1918) ("It is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial procedure should be followed and habeas corpus should not be granted in advance of a trial."); *Winn v. Cook*, 945 F.3d 1253, 1263 (10th Cir. 2019) ("Relief for state pretrial detainees through a federal petition for writ of habeas corpus is generally limited to speedy trial and double jeopardy claims." (citation omitted)); *Dolack v. Allenbrand*, 548 F.2d 891, 894 (10th Cir. 1977) ("[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts." (citation omitted)). And, as Respondents note, if Gilliland is tried and convicted, she may seek review of her judgment and sentence in the Supreme Court of the Cherokee Nation. Dkt. No. 9 at 13 (citing Cherokee Nation Supreme Court Rule 70(B)).

Dated this 24th day of April, 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE